IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | | |
|---|---|---|
| American United Life Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 7:12-1713-JMC-KFM  **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) ) | |
| Misty Williford, Debra M. Crane, Cayce M. Tate, the Estate of Thomas R. McKinney, the Estate of Mariann Pearson Sherbert, the Estate of Shirley McKinney, and Billy McKinney, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendant Misty Williford's motion for summary judgment as to defendant Debra Crane (doc. 53). Defendants Crane and Billy McKinney are proceeding *pro se*. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

This action was commenced by American United Life Insurance Company ("the plaintiff") on June 22, 2012. The plaintiff sought to interplead insurance funds for a life insurance policy on the life of the decedent Thomas McKinney ("Decedent"). On September 26, 2012, the plaintiff filed a motion to deposit funds and requested to be dismissed from this case. On November 30, 2012, the Honorable J. Michelle Childs, United States District Judge, issued an order (doc. 46) granting the plaintiff's motion and dismissing the plaintiff from the case.

Decedent was employed by Crowder Construction Company ("Employer"). Employer established and maintained group life insurance coverage with the plaintiff

insurance company for the benefit of its employees as part of an Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1001 *et seq.*) governed employee welfare benefit plan ("the Plan").  Decedent was a covered insured under a basic group life insurance policy (Policy Number 604812-0000-000) issued to Employer ("the Policy").  The death benefit under the Policy is $110,000.00.

The plaintiff attached several documents to the complaint.  Pursuant to a document captioned "Group Health/Life Enrollment Form" dated November 25, 2003, Decedent designated Mariann Pearson Sherbert as the beneficiary under the Policy (doc. 1-1).  On November 4, 2004, Decedent completed an open enrollment form, indicating that Ms. Sherbert remain his beneficiary (doc. 1-2).  Ms. Sherbert died on August 30, 2008, and her estate is being or has been probated by the Spartanburg County Probate Court.  Defendant Cayce M. Tate is her sole heir.

According to the complaint, on March 12, 2005, Decedent sustained a closed head injury.  On August 4, 2005, the Cherokee County Probate Court issued an order finding that, after considering the testimony of the hearing on June 22, 2005, Decedent was an incapacitated person for whom appointment of a conservator was proper (doc. 9-1).  On August 16, 2005, Decedent's parents, Billy and Shirley McKinney, were appointed as guardians and conservators.  Their powers as conservators were restricted to the deposit of Decedent's disability check and to the expenditure of $1,200.00 per month of Decedent's assets to provide for his care (doc. 1-3).

Pursuant to a document captioned "Beneficiary Designation Under Group Life Insurance Policy" dated September 15, 2005, Decedent may have designated his daughter, defendant Misty Williford, as the beneficiary under the Policy (doc. 1-4).  Subsequently, on a document captioned "Life Insurance Beneficiary" dated May 4, 2007, Decedent may have designated his mother, Shirley McKinney, as the beneficiary under the Policy (doc. 1-5).  Shirley McKinney died on January 12, 2010.

On or about May 13, 2010, defendant Debra Crane, Decedent's sister, and defendant Billy McKinney, Decedent's father, were appointed as conservators by the

Cherokee County Probate Court. They were prohibited from expending Decedent's funds without a court order (doc. 1-6). On a form captioned "Beneficiary Designation Under Group Life Insurance Policy" dated June 1, 2010, Decedent may have designated Debra Crane as the beneficiary under the Policy (doc. 1-7).

Decedent died on or about June 12, 2010, and the Policy benefits are now subject to distribution. Section 18 of the Policy provides as follows:

> Once acceptable proof of death is received, [the plaintiff] will determine the Beneficiaries or payees in the following order:
>
> 1. Beneficiaries who outlive the Person. If more than one Beneficiary is designated and no order of preference is given, then all Beneficiaries will share equally. If more than one Beneficiary is listed within the same order of payment and no distributive share is indicated, then all Beneficiaries will share equally;
>
> 2. If no named beneficiaries out live the person or none were named, then, at AUL's option, a surviving relative if the person's estate is not substantial and there are no statutory requirements to the contrary. Relatives will be considered in descending order of preference as follows:
>
>     (a) spouse;
>     (b) child(ren);
>     (c) parent(s);
>     (d) brother(s) or sister(s); or
>
> 3. the Person's estate.

(Doc. 1-8 at p. 18).

Defendant Williford, individually and as personal representative of Decedent's estate, answered the complaint and brought a cross-claim against all other co-defendants, seeking a determination that she is entitled to the insurance proceeds or that, alternatively, Decedent's estate is the proper beneficiary (doc. 9).

Defendant Crane filed an answer and cross-claim in which she asks the court to determine that she is entitled to the life insurance proceeds as the named beneficiary of the life insurance policy (doc. 37).

3

Defendant Tate was served with the summons and complaint on August 10, 2012, and has not filed an answer in this matter (doc. 19). Defendant Estate of Mariann Pearson Sherbert was served with the summons and complaint on August 20, 2012, and has not filed an answer in this matter (doc. 21). Defendant Estate of Shirley McKinney was served with the summons and complaint on August 30, 2012, and has not filed an answer in this matter (doc. 32).

On August 28, 2012, defendant Billy McKinney filed a letter with the court stating that he did not intend to pursue the insurance proceeds (doc. 22).

On February 19, 2013, defendant Williford filed a motion for summary judgment as to defendant Crane (doc. 53). By order filed February 20, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the defendants were advised of the summary judgment dismissal procedure and the possible consequences if they failed to adequately respond to the motion. On March 26, 2013, defendant Crane filed her opposition to the motion (doc. 56). No other defendant filed opposition to the motion.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds by* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Defendant Williford argues that Decedent lacked the mental capacity to change the Policy beneficiary designations after the appointment of a conservator on his behalf. Parties executing a contract in South Carolina are presumed to possess the requisite mental capacity. *Rouvet v. Rouvet*, 696 S.E.2d 204, 209 (S.C. Ct. App. 2010) (noting that "[t]he burden of proving mental incompetency is upon the one seeking to establish it"). In South Carolina, contractual capacity is "a person's ability to understand, at the time that the contract is executed, the nature of the contract and its effect." *In re Thames,* 544 S.E.2d 854, 857 (S.C. Ct. App. 2001). In a contract setting, courts should look "specifically to the condition of a party at the time of a transaction." *Church v. Trotter,* 299 S.E.2d 332, 333 (S.C. 1983). "The party alleging incompetence must prove by a preponderance of the evidence that he was incompetent at the time of the transaction." *Grapner v. Atlantic Land Title Company, Inc.,* 416 S.E.2d 617, 618 (S.C. 1992). While an adjudication of incompetence is not necessary to prove mental incompetence, "an adjudication of incompetency is but *prima facie* evidence of that fact." *Id*.

Defendant Williford also argues that the doctrine of judicial estoppel prevents defendant Crane from asserting Decedent had the mental capacity to manage his own affairs. "'Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.'" *Whitten v. Fred's, Inc.*, 601 F.3d 231, 241 (4th Cir. 2010) (quoting *Lowery v. Stoval*, 92 F.3d 219, 223 (4th Cir. 1996), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S.Ct. 2434 (2013)). The three factors used in the Fourth Circuit to determine the applicability of judicial estoppel are: (1) that the party sought to be estopped is seeking to assert a factual position that is inconsistent with a factual assertion made in prior litigation; (2) that the prior assertion was adopted by the prior court; and, (3) that the party sought to be judicially estopped has, in bad faith, intentionally misled the court to gain an unfair advantage. *Id*. (citation omitted).

Defendant Williford further argues that, as a co-conservator of Decedent's property, defendant Crane had a confidential relationship with Decedent, which created the presumption of undue influence. "[T]he existence of a confidential relationship creates a presumption that the instrument is invalid, and the burden then shifts to the proponent of the instrument to affirmatively show the absence of undue influence." *Macaulay v. Wachovia Bank of South Carolina*, 569 S.E.2d 371, 378 (S.C. Ct. App. 2002) (citing *Bullard v. Crawley*, 363 S.E.2d 897, 900 (S.C. 1987)). South Carolina Code Annotated Section 62-5-417 states that "a conservator is to act as a fiduciary and shall observe the standards of care applicable to trustees as described by Section 62-7-933." "'A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter in equity and good confidence is bound to act in good faith and with due regard to the interest of the one imposing the confidence.'" *Howard v. Nasser,* 613 S.E.2d 64, 67 (S.C. Ct. App. 2005) (quoting *In re Estate of Cumbee*, 511 S.E.2d 390, 394 (S.C. Ct. App. 1999)).

In this case, on August 4, 2005, the Cherokee County Probate Court found Decedent was an incapacitated person for whom appointment of a conservator was proper

(doc. 9-1 at p. 3), and Decedent's parents, Billy and Shirley McKinney, were appointed as guardians and conservators (doc. 1-3). Thereafter, a series of beneficiary designation forms were executed as follows:

> (a) On September 15, 2005, defendant Williford was designated as beneficiary; and
>
> (b) On May 4, 2007, Shirley McKinney (now deceased) was designated as beneficiary.

On March 5, 2010, defendant Crane filed a petition seeking to be appointed as co-conservator with Billy McKinney because Shirley McKinney had passed away (doc. 53-2). The South Carolina Probate Code provides that it is appropriate to appoint a conservator if the court determines "the person is unable to manage his property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability" and "that protection is necessary or desirable to obtain or provide funds." S.C. Code Ann. § 62-5-401(2) (2010). Defendants Crane and Billy McKinney were appointed conservators for Decedent on May 13, 2010, and two weeks later, on June 1, 2010, a form was executed designating defendant Crane as beneficiary.

While defendant Williford argues that the assertion that a conservator is necessary to protect the property of Decedent is inconsistent with Decedent having had the mental capacity to enter into contractual relations with respect to his insurance policy, the statute cited above provides that it is also appropriate to appoint a conservator if the court determines, "the person is unable to manage his property and affairs effectively for reasons such as . . . physical illness or disability . . . ." S.C. Code Ann. § 62-5-401(2). In response to the motion for summary judgment, defendant Crane states that "[t]hrough rehabilitation and therapies Decedent was more clear minded and Defendant Crane always consulted with him on decisions on his behalf. Decedent was physically incapable more so than mentally incapable" (doc. 56). As an exhibit to her response, defendant Crane submitted a letter from Dorotea Gabel, M.D. of Spartanburg Internal Medicine dated October 11, 2012. The letter states: "Our patient, Thomas McKinney, during his disease was alert and at times

7

was able to verbalize and seemed oriented" (doc. 56-1). Defendant Crane also produced the affidavit of Gary Adkins, who is the pastor of the church Decedent and his family attended, who states that he visited Decedent "in his home and ministered to him and his family at each hospital stay." Rev. Adkins further states that he, "witnessed the mental status of [Decedent] during his illness and found him to be mentally competent" (doc. 53-3 at p. 4). Defendant Crane also produced the affidavits of a paid caregiver, an aunt, two neighbors, and Decedent's father, two sisters, and brother-in-law, who all state that they "will testify as to the mental competence of [Decedent]" (*id.* at pp. 5-12).

After reviewing the record in this case, this court concludes that defendant Crane has proffered sufficient evidence to create a genuine factual dispute regarding whether Decedent had the requisite mental capacity to modify the beneficiary of his life insurance policy on June 1, 2010. Furthermore, this court finds that a genuine issue of material fact exists regarding defendant Williford's claim of undue influence. While it is clear that a confidential/fiduciary relationship existed between Decedent and defendant Crane, defendant Crane has presented sufficient evidence rebutting the presumption of undue influence to create a genuine issue of material fact on this issue. *See Howard v. Nasser*, 613 S.E.2d 64, 69-70 (S.C. Ct. App. 2005) (holding issue material fact existed on issue of alleged undue influence by fiduciary).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that defendant Williford's motion for summary judgment as to defendant Crane (doc. 53) be denied. Defendant Williford's motion for a hearing on the motion for summary judgment (doc. 58) is denied.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 26, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).